# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| MICHAEL JAMES GOMEZ, ) | |
| ) | |
| Petitioner, ) | CIV 10-01179 PHX NVW (MEA) |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| BRIGADIER GENERAL KURT ) | |
| NEUBAUER, ) | |
| MAJOR MICHAEL BORDERS, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

**TO THE HONORABLE NEIL V. WAKE:**

Mr. Michael Gomez ("Petitioner"), who is represented by counsel in this matter, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241(c)(3) on June 3, 2010. Petitioner is in the custody of the Security Forces at Luke Air Force Base in Glendale, Arizona. Respondents filed an answer ("Answer") (Doc. 9) to the petition on July 2, 2010. Petitioner filed a reply (Doc. 13) to the answer on August 16, 2010.

**Background**

Petitioner enlisted for a four-year term of service on April 11, 2006. Answer, Exh. 1 & Exh. 2. In January 2010, Petitioner was charged by the military with wrongful use of MDMA (Ecstacy) and alprazolam (benzodiazapine), in violation of the Uniform Code of Military Justice. Id., Exh. 1. The charges

were withdrawn several days after they were filed. Id., Exh. 1. On February 2, 2010, Petitioner applied to separate from the Air Force at the expiration of his term of service on April 10, 2010, by submitting a AF IMT 100, Request and Authorization for Separation. Id., Exh. 5.

In early February of 2010, Petitioner presented a copy of his separation orders to Master Sergeant John Alsvig, who told Petitioner that the orders were invalid because of the investigation for drug use and that charges would be preferred against him prior to his date of separation. Id., Exh. 6. On April 6, 2010, four days prior to the expiration of Petitioner's four-year term of service, the Air Force preferred charges against Petitioner for wrongful use of MDMA and alprazolam. Id., Exh. 2. On April 6, 2010, Petitioner's status was placed on administrative hold so that his separation processing would cease pending court-martial. Id., Exh. 8.

On April 9, 2010, Petitioner was "out-processed" or separated, he left base, and his final pay was deposited directly into his bank account. Id., Exh.6, Exh. 12, Exh. 13.

On May 14, 2010, Petitioner was taken into custody in California. Petitioner was transferred to the custody of Security Forces at Luke Air Force Base in Arizona. On May 21, 2010, an Air Force Colonel ordered Petitioner detained pending court-martial. Id., Exh. 1. On May 28, 2010, the Air Force charged Petitioner with fraudulently obtaining a discharge, desertion, and wrongful use of clonazepam (benzodiazepine). Id., Exh. 2 & Exh. 17.

Petitioner seeks his release from the Air Force's custody and asserts he is no longer subject to the jurisdiction of the military for a court-martial because he has been discharged from service, citing 10 U.S.C. § 1168(a). Petitioner argues that subjecting him to a court-martial is not authorized because he does not fit into any category of individual listed in 10 U.S.C. § 802(a).

Answering the petition, Respondents assert the Air Force has lawful custody of Petitioner.

> The Air Force contends that Petitioner never received his discharge certificate, and thus he was never lawfully discharged from the Air Force. Further, the Air Force contends that Petitioner attempted to fraudulently obtain a discharge; therefore, even if Petitioner had received his discharge certificate, the discharge would be invalid. Finally, the Air Force contends that the completion of most of the Petitioner's separation process was the result of administrative error (induced by fraud), and such error allows the discharge to be revoked within a reasonable time. Since Petitioner was not lawfully discharged from the Air Force, his detention pending court-martial is constitutional.

Answer at 2.

Respondents further allege:

> At his final out-processing appointment on April 9, 2010, Petitioner presented a "Quality Force Check" (part of the out-processing member checklist), which requires the signature of an airman's First Sergeant to ensure that the member has not received certain disciplinary actions within sixty days of separation. The signature that appeared on the checklist was MSgt David Garcia's, dated April 8, 2010. [] MSgt Garcia, however, was not present at Luke Air Force Base on April 8, 2010, and MSgt Garcia has declared that the signature on Petitioner's out-processing checklist was not his signature. []

-3-

> On Monday, April 12, 2010, MSgt Alsvig left a voice mail with Petitioner informing him he had 24 hours to report for duty before being AWOL. [] Also on Monday, Petitioner's separation orders were formally revoked through an AF IMT 973. [] On Tuesday, April 13, 2010, the finance office sent a request (which was unsuccessful) to Chase/JP Morgan to return direct deposit of Petitioner's final pay check. [] **Petition never received his discharge certificate, DD Form 214.** On Monday, April 12, 2010, the DD Form 214 documentation office noticed the separation on Petitioner had been canceled, and so Petitioner's DD Form 214 was not signed nor put in the mail. A DD Form 214 worksheet contains important information but no signatures, and it is printed and completed by an airman (not by the documentation office) prior to separation. Although the document appears the same as a DD Form 214, the worksheet is not official, validated, or reviewed. The official DD Form 214 is the last step in separation, and is the official record of service and separation.[]

Id. at 3 (citations to record omitted and emphasis added).

In response to the answer to his petition Petitioner argues: "In 10 U.S.C. § 1168(a),[1] Congress linked the discharge of a servicemember to the moment at which the servicemember's discharge certificate and final pay are 'ready for delivery' to him..." Doc. 13 at 4. Petitioner asserts his discharge was complete notwithstanding the fact that he did not receive an official DD Form 214. Petitioner contends section 1168(a) "'does not mandate actual receipt of discharge documents, but rather that the documents be ready for delivery to service

---

[1] This section states:
A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.
10 U.S.C. § 1168(a) (2010).

-4-

members on their separation date.'" Id. at 4, quoting Spehr v. United States, 51 Fed. Cl. 69, 89 (Fed. Cl. 2001).

Petitioner argues:

> The Air Force contends that, because it failed to deliver Mr. Gomez's DD Form 214 form to him as required by its regulations, it retained court-martial jurisdiction over him. (Dkt. #9 at 5-7) This contention rests on the premise that this Court may in effect replace the phrase "ready for delivery" in § 1168(a) with the phrase "actually delivered." ... The ordinary, contemporary, and common meaning of the phrase "ready for delivery" is "ready for delivery," not "actually delivered." The Air Force's contrary interpretation also overlooks the fact that, as the Supreme Court stressed in Toth, statutory constructions that expand the military's court-martial jurisdiction over ex-servicemembers are to be avoided, because they tend to encroach upon the jurisdiction of Article III courts, which afford defendants "more constitutional safeguards" than military courts. Toth, 350 U.S. at 15. As the Court of Appeals for the Armed Forces stressed in Smith v. Vanderbush, 47 M.J. 56 (C.A.A.F. 1997), the Toth decision set forth the Supreme Court's strong "admonition ... that jurisdiction over former servicemembers calls for exercise of 'the least possible power adequate to the end proposed.'" Id. at 61 (quoting Toth, 350 U.S. at 23 (second internal quotation marks omitted)).

Id. at 6.

**Analysis**

The parties do not dispute that Petitioner was charged with wrongful use of MDMA and alprazolam on April 6, 2010, and that his term of service was to expire on April 10, 2010. Neither do the parties dispute that a hold was placed on Petitioner's separation on April 6, 2010, and that Petition never received a signed discharge certificate. Respondents aver that on April 12, 2010, the military's DD Form 214 documentation

-5-

office noticed Petitioner's separation from service had been canceled. Respondents assert that, not only was Petitioner's DD Form 214 not received by Petitioner, it was never signed nor put in the mail.

Petitioner challenges only the military court-martial's jurisdiction to try him. Pursuant to 28 U.S.C. § 2241, a civilian may collaterally attack court-martial jurisdiction in the District Court without first exhausting military remedies. See Schlesinger v. Councilman, 420 U.S. 738, 758-59, 95 S. Ct. 1300, 1313-14 (1975); Toth v. Quarles, 350 U.S. 11, 13 n.3, 76 S. Ct. 1, 3 n.3 (1955); Machado v. Commanding Officer, Plattsburgh Air Force Base, 860 F.2d 542, 544 (2d Cir. 1988). "'Courts-martial are tribunals of special and limited jurisdiction whose judgments, so far as questions relating to their jurisdiction are concerned, are always open to collateral attack.'" Fricke v. Secretary of the Navy, 509 F.3d 1287, 1289 (10th Cir. Cir. 2007), quoting Givens v. Zerbst, 255 U.S. 11, 19, 41 S. Ct. 227, 228-29 (1927). Petitioner bears the burden of establishing that the Air Force lacks jurisdiction over him regarding the charges proffered on April 6, 2010. See Machado, 860 F.2d at 544 ("Possession of the original [discharge] certificate in apparently proper form is obviously helpful to Machado on the issue of delivery. However, on a petition for the civil remedy of habeas corpus, petitioner bears the burden of proving by a preponderance of evidence that he is entitled to relief."), citing Johnson v. Zerbst, 304 U.S. 458, 468-69, 58 S. Ct. 1019, 1024-25 (1938).

The military's ability to exercise court-martial jurisdiction over an offense is predicated on one factor: "the military status of the accused." Solorio v. United States, 483 U.S. 435, 439, 107 S. Ct. 2924, 2927 (1987). "It is black letter law that in personam jurisdiction over a military person is lost upon his discharge from the service, absent some saving circumstance or statutory authorization." United States v. Howard, 20 M.J. 353, 354 (C.M.A. 1985). However, the military's jurisdiction over a servicemember, once established while he is still a member of the military, may continue past the scheduled expiration of his military commitment. See Smith v. Vanderbush, 47 M.J. 56, 57-58 (C.A.A.F. 1997).

> Subject to certain narrow exceptions ... a court-martial does not have jurisdiction over persons lawfully discharged from the armed forces, including cases involving offenses allegedly committed prior to discharge. Smith v. Vanderbush, 47 MJ 56 (1997); see United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S. Ct. 1, 100 L.Ed. 8 (1955). A servicemember will not be considered to have been lawfully discharged, however, unless: (1) the member received a valid discharge certificate or a certificate of release from active duty, such as a Department of Defense Form (DD Form) 214; (2) the member's "final pay" or "a substantial part of that pay" is "ready for delivery" to the member; and (3) the member has completed the administrative clearance process required by the Secretary of the service of which he or she is a member. United States v. King, 27 MJ 327, 329 (CMA 1989); accord United States v. King, 42 MJ 79, 80 (1995); see 10 USC §§ 1168 and 1169.
> **Under paragraph 1-31d of Department of the Army Regulation (AR) 635-200 (26 June 1996), a discharge takes effect at "2400 [hours] on the date of notice of discharge to the soldier."** Even if a discharge certificate and separation orders are delivered to a member earlier in the day as an administrative convenience for the unit or the

-7-

> servicemember, the discharge is not effective upon such a delivery unless it is clear that it was intended to be effective at the earlier time. Compare United States v. Batchelder, 41 MJ 337 (1994), with United States v. Howard, 20 MJ 353 (CMA 1985 ); see also United States v. Guest, 46 MJ 778 (Army Ct. Crim. App. 1997).

United States v. Melanson, 53 M.J. 1, 2 (C.A.A.F. 2000) (emphasis added).

The record in this matter indicates that the military exerted lawful jurisdiction over Petitioner prior to the time he asserts he was "discharged." Charges were proffered against Petitioner on April 6, 2010, prior to the time his military service was set to expire, i.e., at 2400 hours on April 10, 2010.

> Court-martial jurisdiction attaches when "action with a view to trial" takes place. RCM 202(c)(1); Allen, 759 F.2d at 1471. RCM 202(c)(2) states that "[a]ctions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges." Charges were preferred against Williams on September 20, 2001, before his ETS of December 29, 2001. Def.'s Judgment Mot.App. at 28-29. Consequently, because of the court-martial charges pending against then-Staff Sergeant Williams, the Air Force had authority to retain jurisdiction over him after his term of service had expired.

Williams v. United States, 71 Fed. Cl. 194, 201-02 (Fed. Cl. 2006).

The record also indicates that Petitioner was not "discharged" from service on April 10, 2010. With regard to the test stated in Melanson, Petitioner did not receive a valid DD Form 214, although Petitioner's final pay was ready for delivery

-8-

to him and was delivered to him. It is at best arguable that Petitioner completed the administrative clearance process required by the Secretary of the Air Force prior to leaving base.

A servicemember's collection of their final pay, without an accompanying delivery of a discharge certificate or other valid notice of status termination, does not terminate the service member's military status. See United States v. Palumbo, 27 M.J. 565, 566-67 (A.C.M.R. 1988). Additionally, Petitioner's argument that he was discharged on April 10, 2010, is predicated on section 1168, which provides a servicemember "may not be released" until a discharge certificate and final pay are ready for delivery; however, the statute does not say that the events of readiness of the discharge certificate and final pay constitute the service-member's discharge in and of themselves. See Machado, 860 F.2d at 544 ("Although the statute requires that the certificate and final pay only be 'ready for delivery,' it is apparent that the key issues before us are whether they actually were delivered, ..."). See also United States v. Hart, 66 M.J. 273, 275 (C.A.A.F.) (holding that, although the UCMJ itself does not define when a discharge occurs, military courts have looked to 10 U.S.C. §§ 1168(a)), cert. denied, 129 S. Ct. 310 (2008).

The relevant legal opinions indicate that, to be entitled to relief, Petitioner must prove that his discharge certificate was actually "delivered." Machado, 860 F.2d at 545 ("The Court of Military Appeals, the civilian-composed court that reviews military decisions, has said that "[d]ischarge is

effective upon delivery of the discharge certificate[,]"); Howard, 20 M.J. at 354, citing United States v. Scott, 29 C.M.R. 462 (1960). At least one military court has stated that, if "delivery of the discharge certificate" is "accomplished by fraud ... then the delivery loses its legal significance." Howard, 20 M.J. at 354. Additionally, while physical delivery of a discharge certificate is generally considered the event that ends a servicemember's military status, "the discharge authority must have intended the discharge to take effect." United States v. Harmon, 63 M.J. 98, 101 (C.A.A.F. 2006). Accordingly, a servicemember's receipt of a discharge certificate without the military's requisite intent to discharge him does not terminate court-martial jurisdiction. See United States v. Guest, 46 M.J. 778, 780 (A. Ct. Crim. App. 1997). See also United States v. Brunton, 24 M.J. 566, 567-68 (N-M Ct. Crim App. 1987).

Therefore, given the clear evidence that the military did not intend to relinquish jurisdiction over Petitioner and that Master Sergeant Alsvig clearly informed Petitioner that charges would be proffered against him and a hold had been placed on his separation sufficient that generation of a signed DD Form 214 was never accomplished, the Magistrate Judge concludes that Petitioner was not discharged from service and the military has proper jurisdiction to detain and court martial Petitioner. See Harmon, 63 M.J. at 101 (holding discharge not yet effective when commander placed a valid legal hold on the defendant's discharge); United States v. Williams, 53 M.J. 316, 317 (C.A.A.F. 2000) (concluding a valid legal hold had been

placed on the separation before the individual's discharge was effective); Melanson, 53 M.J. at 4 (holding a discharge was revoked before becoming effective).

**Conclusion**

Petitioner was charged with violation of the Uniform Code of Military Justice prior to the date that his term of service expired on April 10, 2010. Additionally, Petitioner was not "discharged" from the military on April 10, 2010, as that term is defined by the military courts and federal courts for the purpose of determining if a habeas petitioner has properly alleged the military's exercise of jurisdiction violates their constitutional rights or federal statutes.

**IT IS THEREFORE RECOMMENDED** that Mr. Gomez' Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules

of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 2nd day of September, 2010.

_____
Mark E. Aspey
United States Magistrate Judge

-12-